SAVIDGE *v*. VILLAGE OF SPRING LAKE.

1. INJUNCTION—DIVERSION OF PUBLIC FUNDS—SUIT BY TAXPAYER.
   A resident taxpayer whose interest is sufficient to confer jurisdiction may maintain a bill in equity against a municipality to restrain a threatened and imminent illegal expenditure of the public funds. *Curtenius* v. *Hoyt*, 37 Mich. 583, *Putnam* v. *City of Grand Rapids*, 58 Mich. 416, followed.

2. SAME—ESTOPPEL.
   A taxpayer is not estopped to enjoin a proposed illegal expenditure of public moneys by the fact that he made no attempt to restrain a previous expenditure for the same purpose.

3. MUNICIPAL CORPORATIONS—WATERWORKS—AUTHORITY TO CONSTRUCT.
   A village council cannot construct waterworks designed both for fire protection and to furnish the inhabitants with water, under Act No. 3, Pub. Acts 1895, chap. 10, §§ 1–3, authorizing the purchase of suitable fire engines, and the sinking of wells and construction of cisterns in the streets and other suitable

places, and the making of all necessary provisions for a convenient supply of water for the use of the department, in view of chapter 11, § 4, prohibiting any village from borrowing or expending any money for the purchase or construction of waterworks unless such action is authorized by a two-thirds vote of the electors of the village.

Appeal from Ottawa; Padgham, J. Submitted February 5, 1897. Decided March 10, 1897.

Bill by Sarah C. Savidge to enjoin the village of Spring Lake and its officers from expending money in the construction of waterworks. From a decree for complainant, defendants appeal. Affirmed.

The object of this suit is to permanently enjoin the defendants from expending money in the erection of waterworks for the defendant village. The facts as alleged in the bill and sustained by the proofs are sufficiently stated in the decree, as follows:

" The village of Spring Lake is a municipal corporation of this State, organized under Act No. 3, Pub. Acts 1895. The other defendants above named are the president, treasurer, clerk, and trustees, respectively, of said village. The complainant is a resident and taxpayer of said village, and she is assessed and taxed to the amount of nearly one-half of the taxable property of said village, and she is interested in the subject-matter of this suit in the amount of more than $100 dollars. Prior to the 19th day of February, 1895, the said village of Spring Lake was incorporated as a village under the general laws of this State, and it had, upon the 19th day of February, 1895, when it became reincorporated under said Act No. 3, Pub. Acts 1895, no system of waterworks whatever. In the latter part of 1895, the village of Spring Lake caused to be erected in said village an engine house, placed a pump therein, sank some drive wells, and connected the same with said pump, ran some pipe from the pump to the street, and placed a hydrant connecting with said pipe in said street, all at an expense of over $1,500, and this expense was incurred without a vote of the taxpayers of said village. Upon the 8th day of

June, 1896, a special election was held in said village of Spring Lake upon the question of bonding the said village in the sum of $5,000, for the purpose of constructing waterworks therein, and said question was decided at said election adversely to bonding said village for the construction of waterworks, the necessary two-thirds not voting therefor.   Thereupon, and after the said election, the common council of said village of Spring Lake, without any vote of the electors of the said village authorizing the same, passed the following resolution: '*Resolved*, by the common council of the village of Spring Lake, that the committee on waterworks be instructed to contract for from 1,500 to 2,500 feet, more or less, of six and eight inch pipe, for water mains, with hydrants and gate valves, at the lowest price obtainable, and lay the same on State street, east and west from the present hydrant; and that the village clerk is hereby instructed to draw orders for the payment of all or any part of the same, on demand of the president of the village and the indorsement of the said committee.' Thereupon the said committee took steps for the purchase of the pipe and material mentioned in said resolution, and it was intended to purchase said pipe and material, to draw orders for the purchase of such pipe and material, and to pay such orders.

"It is further ordered, adjudged, and decreed by the court as follows: That the erection of the engine house, putting in of pumps, sinking of wells, laying of pipes, and putting down of a hydrant in the latter part of 1895, the same being unauthorized by a vote of the electors of the said village of Spring Lake, was, so far as the same was the beginning of a waterworks system, without authority, and that upon the 15th day of June, 1896, the village of Spring Lake had no waterworks system authorized by law; that the material and water pipes specified in said resolution of June 15, 1896, were for the purpose of constructing a waterworks system in the village of Spring Lake; that said resolution was unauthorized and void; that the purchase of the pipe and material mentioned in said resolution could not be made without a vote of two-thirds of the electors of said village voting therefor; and that all orders drawn for the payment of the pipe and materials would be void, and the payment therefor by the village treasurer without authority of law."

Decree was entered for the complainant.

*George A. Farr* (*Thomas S. Jerome*, of counsel), for complainant.

*Walter I. Lillie*, for defendants.

GRANT, J. (*after stating the facts*).   1. It is well settled in this State that a taxpayer in the situation of the complainant is entitled to maintain a suit to restrain the illegal action of a municipality in the expenditure of money. *Curtenius* v. *Hoyt*, 37 Mich. 583; *Callam* v. *City of Saginaw*, 50 Mich. 7; *Putnam* v. *City of Grand Rapids*, 58 Mich. 416.

2. Complainant was not estopped from contesting this action of the council under the rule laid down in *Lundbom* v. *City of Manistee*, 93 Mich. 170. The election at which the proposition to raise money for the construction of waterworks was defeated, was held June 8, 1896. The action of the common council to proceed in defiance of this vote was taken June 15th of the same year. Complainant filed her bill on July 2d following. The estoppel is claimed to exist by reason of the action of the council in erecting an engine house, etc., in 1895. The answer to this claim is that there is no proof that complainant knew that the council was illegally expending money for that purpose; but, even if she had such knowledge, this would not estop her to restrain subsequent illegal action for the same purpose.

3. Section 4, chap. 11, Act No. 3, Pub. Acts 1895, prohibits any village to borrow, appropriate, raise, or expend any money for the purchase or construction of waterworks, unless such action be authorized by a vote of two-thirds of the electors of the village voting at the election. Defendants seek to maintain their action under section 1, chap. 8, and sections 1–3, chap. 10. The title of chapter 8 is, "Improvements and Assessments." Section 1 provides that the cost and expense of improvements, including, buildings, engine houses, waterworks, etc., shall be paid from the proper general funds of the village.

This, of course, means that such expenditures must be authorized by law, and that the council can expend moneys therefor only when so authorized. The title to chapter 10 is, "Fires and Fire Department." This chapter authorizes the council to "purchase and provide suitable fire engines and apparatus for the extinguishment of fires, and to sink wells and construct cisterns and reservoirs in the streets, public grounds, and other suitable places, and to make all necessary provisions for a convenient supply of water for the use of the department." This chapter does not contemplate that, under the guise of furnishing fire protection, the council may construct waterworks designed both for fire protection and to furnish the inhabitants with water. Such construction would practically nullify chapter 11. The council illegally used $800 of the highway fund for these waterworks in 1895, and it appears from the evidence that in order to pay for the proposed extension it would be compelled again to use that fund.

The decree was right, and is affirmed, with costs.

The other Justices concurred.