BATES *v.* CITY OF HASTINGS.

1. MUNICIPAL CORPORATIONS — UNAUTHORIZED EXPENDITURE OF PUBLIC FUNDS—REMEDIES—SUIT BY TAXPAYERS — EQUITY — INJUNCTION.

A taxpayer is entitled to maintain a suit to restrain the illegal action of a municipality in the expenditure of public moneys.

2. SAME—BILL—DEMURRER—QUESTIONS CONSIDERED.

On demurrer to a bill by a taxpayer to restrain the illegal action of a municipality in the expenditure of public moneys, the court cannot consider the character of the officers of the municipality, nor the probability of their conspiring to do an unlawful act of the character charged, but can only inquire whether the pleading is sufficient under the rules of law to make a case, should its allegations be supported by competent proof.

3. SAME—BILL—SUFFICIENCY.

A bill by a taxpayer against the officers of a municipality alleging that defendants have conspired to issue the bonds of the municipality ostensibly for legal purposes, intending to sell them to innocent purchasers and expend the funds so raised for illegal purposes, states a case within the jurisdiction of equity, entitling complainant to relief by way of injunction to restrain the threatened expenditure.

4. SAME—PREMATURITY OF BILL.

A bill by a taxpayer against the officers of a municipality to restrain the illegal expenditure of public funds, raised by the sale of bonds issued pursuant to proceedings regular on their face, is not prematurely filed though no illegal act is shown to have been done by the defendants, since the issuance of the bonds would create a valid municipal debt which complainant could not evade, and his only remedy would be the possibility of intervention between the receipt of the money by the defendants and its disposition as contemplated.

5. SAME—DEMURRER—ALLEGATIONS ADMITTED—INFORMATION AND BELIEF.

In a bill by a taxpayer against the officers of a municipality to restrain the illegal expenditure of public funds raised by the sale of bonds issued pursuant to proceedings regular on their face, an allegation that "the bonds will be immediately is-

sued and disposed of to innocent purchasers as your orator has good reason to believe and does believe," is not a mere allegation of information and belief, but is an allegation of fact based on information and belief, the truth of which is admitted by demurrer.

6. SAME—MUNICIPAL RECORDS—PAROL EVIDENCE—IMPEACHMENT.
The rule that parol evidence will not be received to impeach the records kept by a municipal council has no application to a case in which it is alleged that by the making of false records the officers of a municipality are attempting to secure and expend public money for an unauthorized purpose.

Appeal from Barry; Wolcott, J., presiding. Submitted June 6, 1906. (Docket No. 19.) Decided September 20, 1906.

Bill by Richard M. Bates and Frank R. Pancoast against the city of Hastings and others to enjoin the illegal expenditure of public funds. From an order overruling a demurrer to the bill, defendants appeal. Affirmed.

*Thomas Sullivan* and *Fred W. Walker*, for complainants.

*A. E. Kenaston, Colgrove & Potter*, and *Thomas & Pryor*, for defendants.

CARPENTER, C. J. The opinion of Judge Wolcott in disposing of this case in the lower court is so satisfactory that we adopt it as the main portion of the opinion of this court. That opinion is as follows:

"The complainants bring this suit as property owners and taxpayers in the city of Hastings. The bill charges, in effect, a conspiracy on the part of the defendants to raise money in the city of Hastings under the guise of taxation for public purposes, but with the intent to use the same in the payment of bonuses to induce manufacturing and industrial enterprises to locate within the corporate limits of the city of Hastings.

" The material allegations of the bill will be referred to later. It asks an injunction enjoining the defendants from conspiring and acting together to carry out the ille-

gal scheme set forth, and from issuing any of the bonds of the city for the purpose of raising money to donate to private enterprises, and particularly that the mayor, city attorney, and city council be restrained from issuing said bonds or raising money thereby to donate to private enterprises.    The bill is demurred to on the general grounds:

" ' (1) That the averments of fraud and conspiracy are too general, and that the bill contains no specific averment of wrong-doing, and that no facts and circumstances from which fraud is fairly inferable are alleged.

" ' (2) That the bill does not attack the regularity or validity of the proceedings in the council, but admits that on their face they are regular and in compliance with the charter and laws governing the bonding of cities; that the injury complained of rests solely in the alleged intent of the public officials to commit a wrong in the future, and is not susceptible of proof, for the reason that the motives or reasons of the legislative body inducing the passage of the act cannot be inquired into.

" ' (3) That the bill is prematurely filed.'

" 1. It seems to be conceded that the purposes named in the resolution passed by the council, for the raising and expenditure of money contemplated by it, are valid and proper municipal purposes; that the common council had the power to pass the resolution, and that the question of raising the money was submitted to the people in regular form at an election, and was carried.   On the other hand, it is conceded that the common council had no power, under the Constitution, laws of the State, and under its charter, to raise money by taxation for other than municipal purposes; that it had no right to appropriate public money for private purposes; that it had no right to use the money from the sale of these bonds to promote private enterprises.

" In other words, it is conceded, on the one hand, that, if the moneys raised by the sale of the bonds are used for the purposes stated in the resolution of the common council, it is a valid and proper exercise of the taxing power; and, on the other hand, that, if the moneys so raised should be appropriated to any of the purposes to which the bill alleges it is the intention to devote them, such use would be unlawful.

" I think it is well settled in this State that a taxpayer is entitled to maintain a suit to restrain the illegal action of the municipality in the expenditure of public moneys.

*Savidge* v. *Village of Spring Lake*, 112 Mich. 91; *Curtenius* v. *Hoyt*, 37 Mich. 583.

"The demurrer admits the facts which are well pleaded in the bill, and the question on this point is a question of pleading. Does the bill sufficiently set forth a state of facts and circumstances from which a fraudulent intent on the part of the defendants, particularly the public officials, is fairly inferable?

"It is urged that the demurrer is aided by the presumption of honesty and proper motives on the part of the public officials. It is true that, in passing upon a disputed question of fact where fraud is charged, it is a rule of law that every man will be credited with an honest, rather than a dishonest, motive in a transaction not suspicious on its face nor surrounded by such circumstances as would fairly lead an unprejudiced mind to the conclusion that a fraud was intended. But, in passing upon the sufficiency of a pleading, the court can only inquire whether the pleading is sufficient under the rules of law to make a case, should its allegations be supported by competent proof.

"It is suggested that it is highly improbable that public officials, and men of the character of the defendants, would deliberately enter into an unlawful scheme to misappropriate public moneys. This, however, is a consideration more properly addressed to the court in weighing the evidence, should the case come to trial. The court, in this proceeding, cannot consider the character of the parties, nor the probability or improbability of their conspiring to do an unlawful act of the character charged. The question here must depend upon the sufficiency of the bill of complaint.

"The bill alleges, in substance, that an organization was at one time formed among some of the citizens of Hastings to devise means to raise money to be offered as a financial inducement to industrial enterprises to locate in Hastings. This is alleged to have been a failure. None of the defendants are named as having been associated therewith, nor is the purpose of such organization claimed to have been in any sense unlawful.

"The bill further alleges that thereafter certain citizens of Hastings began to advocate a plan to raise money by taxation, ostensibly for municipal purposes, but in reality for the payment of bonuses to industrial enterprises to induce them to locate in Hastings. These citizens are not

named, but it is alleged that they appealed to various members of the city council and induced them to look with favor upon the plan, and that they and other city officials ultimately entered into a conspiracy which was, in substance, to bring influence to bear through the press and otherwise upon the citizens generally to induce them to approve the plan and subsequently to vote for it, the plan as alleged being to secure a favorable vote to the citizens on a proposition to bond the city for municipal purposes and so to make it possible to lawfully issue and sell bonds, with the intent, as soon as the money was obtained, to use it for private enterprises; and it is alleged that to that end the defendants and others freely urged the citizens to vote for the bond issue, concealing the fact that such proposed use would be unlawful, but setting forth the benefits to accrue to the city and to its inhabitants by the promotion of industrial and manufacturing institutions.

"It is alleged that, in pursuance of such plan, the various newspapers, in confederacy with the other defendants, openly avowed that the real purpose of raising the money was to pay bonuses to industrial enterprises, factories, etc., and advocating the same on the ground that it would increase business, increase the opportunities for labor, advance the prices of property, increase the population, etc.

"The bill further alleges that in pursuance of the same plan a commission was created, consisting of seven members, who are also named as defendants. The ostensible purpose of this commission it is alleged was to aid in carrying out the resolution of the council before referred to, to act as an advisory board with the common council in putting into effect such resolution, to the end that the money might be wisely and economically expended for the greatest good and largest benefit to each and every citizen. It is alleged, however, that the real purpose of this commission was, among other things, to approve of and to aid the illegal plan and purpose before mentioned.

"It is alleged that a part of the plan was to have the records and resolutions of the common council so appear as to conceal the real intent, so that the bonds might be disposed of to innocent purchasers and make the same a binding obligation upon the taxpayers.

"It is alleged that the advocacy of this illegal plan has been consistently pushed, advocated, and countenanced

by the various defendants; that it is intended that the bonds shall be issued and disposed of to innocent purchasers and the money immediately placed in the hands of private individuals for the purpose of paying bonuses and financial inducements to manufacturing and industrial enterprises to locate in the city of Hastings and the money so placed beyond the reach of legal process.

" The bill alleges that the various defendants are now threatening to carry into effect this plan and are actually taking steps to consummate and complete the same.   The foregoing summary of the bill does not follow its exact language in every respect, but is, I think, a fair statement of the material allegations.

" It is urged by the defendants' counsel here that all that was done by defendants, so far as set out in the bill, was just as consistent with a lawful purpose as with an unlawful one.   This is true so far as the resolutions of the council are concerned, but the bill also asserts the defendants, or some of them, have repeatedly avowed that their real purpose and intention are not to use the money for municipal purposes, but to aid private enterprises, and the bill sufficiently alleges a conspiracy or combination which, if true, would make the acts and declarations of one the acts of all.

" If it is in fact true that the defendants have so asserted their intention—and for the purpose of this demurrer we must assume it is true—this would characterize the acts which were essential to be done as a preliminary to raising the money for any purpose.

" The passage of the resolution to raise money for municipal purposes and its submission to the people were essential steps to secure a bond issue which would be negotiated.   Standing alone these acts would be perfectly proper and would be presumed to have been taken in good faith for the purposes indicated on their face.   But it is alleged in the bill that the real purpose and intent on the part of the council and others was not to use the money for the purpose stated in the resolution, but for private enterprises; that this has been openly stated by some of the defendants, and the purpose to use it for private enterprises advocated and countenanced by all the defendants.

" Assuming, as we must, that it is true that the defendants have declared the real purpose to be the unlawful one, this would characterize the acts of the council and

constitute a sufficient statement of acts performed in furtherance of an illegal plan to sustain the bill.

"It is true that injunctions will not issue to allay mere apprehensions of injury. But preventive injunctions necessarily operate upon unperformed and unexecuted acts. The allegation that defendants intend to do a certain act is the allegation of a fact which may be traversed. So too is the allegation that defendants have declared or avowed their intention to do the acts in question.

"I think it must be held that the bill sufficiently alleges an intent on the part of the public officials to make an illegal appropriation of the public funds and sets out sufficient facts and declarations on the part of the defendants to sustain the bill.

"If this is true, equity may intervene by injunction. In 2 Dillon on Municipal Corporations (4th Ed.), § 914, the author states:

"'In this country, the right of property holders or taxable inhabitants to resort to equity to restrain municipal corporations and their officers from transcending their lawful powers, or violating their legal duties in any mode which will injuriously affect the taxpayers, such as making an unauthorized appropriation of the corporate funds, * * * has, without the aid of statute provision to that effect, been affirmed or recognized in many of the States. It is the prevailing, we may now add, almost universal, doctrine on this subject.'

"Mechem on Public Offices and Officers, § 996, says:

"'So the writ [injunction] will be granted to prevent public officers, having the matter in charge, from making illegal expenditures or appropriations of the public funds, or from levying an unjust or unlawful tax.'

"In 1 High on Injunctions, § 500, the author states the rule thus:

"'Fraud has been held a sufficient ground to warrant a court of equity in a departure from the general rule of noninterference with the collection of taxes. And an allegation of fraud in the levying of a tax for an unauthorized purpose is regarded as sufficient to give a court of equity jurisdiction.'

"This State has recognized this ground of equitable jurisdiction. *Curtenius* v. *Hoyt,* 37 Mich. 583; *Callam* v. *City of Saginaw,* 50 Mich. 7; *Putnam* v. *City of Grand*

*Rapids*, 58 Mich. 416; *Savidge* v. *Village of Spring Lake*, 112 Mich. 91; *Bristol* v. *Johnson*, 34 Mich. 123.

"2. It is urged by counsel for defendants that, so long as the members of the common council act within the scope of their authority, their motives and intentions cannot be inquired into nor questioned by judicial process. This principle is stated in Cooley on Constitutional Limitations (6th Ed.), p. 221, as follows:

"'Although it has sometimes been urged at the bar that the courts ought to inquire into the motives of the legislature where fraud and corruption were alleged, and annul their action if the allegation were established, the argument has in no case been acceded to by the judiciary, and they have never allowed the inquiry to be entered upon.'

"In *Angle* v. *Railway Co.*, 151 U. S. 18, it is said:

"'The rule, briefly stated, is that whenever an act of the legislature is challenged in court, the inquiry is limited to the question of power, and does not extend to the matter of expediency, the motives of the legislators, or the reasons which were spread before them to induce the passage of the act. This principle rests upon the independence of the legislature as one of the co-ordinate departments of the government. It would not be seemly for either of the three departments to be instituting an inquiry as to whether another acted wisely, intelligently, or corruptly.'

"There is no question but what it is a well-settled rule of law that the judicial power cannot interfere with the legitimate discretion of any other department of government, unless it is acting beyond its legal discretion. The legislature is a co-ordinate department of government, and it is not for one branch of the government to inquire whether the other has acted wisely or corruptly. It is not, however, the purpose, or intention, or motive, of the council in enacting any legislation within its legal discretion which is brought in question here. But this proceeding is brought to restrain an act outside its legal discretion. If these bonds are negotiated, and the moneys used for the municipal purposes set forth in the resolution, the court cannot inquire whether it was wisely or foolishly expended, or whether the members of the council were actuated in so doing by proper or improper motives; but the court in this case is only asked to restrain an act which it is alleged the council threatens and intends to do, and which it is conceded would be illegal and beyond its power

and entirely outside of any legal discretion committed to it.

"The court is not asked to set aside or nullify any action already taken by the council, nor to interfere with any legal discretion which the council may hereafter take. It is simply asked to restrain an act which it is admitted would be beyond the power and authority of the council to take. The court is asked to restrain the doing of what would be entirely outside the exercise of any legal discretion rested in the council, namely, the 'using of said bonds or the raising of money to donate to private enterprises.'

"3. It is said by defendants' counsel, however, that this bill is prematurely filed; that no illegal act is shown to have yet been done by the common council or by any of the defendants. I think it would be admitted that, if the council should pass and place upon its records a resolution that this money so raised by taxation be expended to promote private enterprises, no one would question the power of the court, on a proper application, to enjoin such illegal appropriation. I see no reason why a court, on a sufficient showing that such action is contemplated and threatened, may not restrain it at any point.

"In this case the proceedings of the council and the vote of the citizens authorizing the bonds are admitted to have been regular—at least, no irregularity is pointed out. It may be presumed that the bonds which the bill alleges are about to be issued by the proper city authorities, will be valid on their face, and may be disposed of to innocent purchasers.

"Such bonds, in the hands of innocent holders without notice, are collectible, and the city must pay them. *Common Council of Cedar Springs* v. *Schick*, 81 Mich. 405 (8 L. R. A. 851); *Township of Grant* v. *Township of Reno*, 107 Mich. 409; *Thompson* v. *Village of Mecosta*, 127 Mich. 522; *Schmid* v. *Village of Frankfort*, 131 Mich. 200.

"The bill alleges that the bonds are about to be issued and negotiated. As soon as this is done a municipal debt is created, and the complainants cannot evade taxation to pay for the same.

"In *Curtenius* v. *Hoyt*, 37 Mich. 583, the court enjoined, at the suit of a taxpayer, the emission of railroad aid bonds. In that case the court say:

"'In the case before us the town authorities had actually proceeded down to the last step in the course of unlawful action intended to create a heavy municipal debt and cause it to be neces-

sary to make large demands on the taxpayers, and nothing remained but the emission of the negotiable evidences of that debt, and the commencement of that act was almost, if not quite, entered upon. If the bonds were once put afloat, the consequence to taxpayers generally, and especially to holders of real estate, could not be otherwise than serious. The unlawful act would necessarily work direct and immediate, as well as indirect and mediate, injury to complainant. It would operate to depress the value of real property and discourage purchasers and threaten a large increase of future public charges, and the chance to avoid the bonds and escape the taxation needful for their payment would be generally esteemed as very uncertain and precarious. The danger was threatened, was imminent, was actually at the door, and my associates think it was competent for complainant to intervene and ask the court to stay the further progress of unlawful action by the board and enjoin the final act about to be performed.'

"The situation in the case at bar is the same if, in fact, the money derived from the sale of the bonds is to be appropriated to private purposes as charged in the bill of complaint. If these bonds were once negotiated, and a debt against the city created, it is too late for the taxpayer to be protected, unless he could possibly intervene between the receipt of the money by the city authorities and its disposition as it is charged in the bill of complaint is contemplated. The court is not asked to enjoin the sale or negotiation of the bonds, nor the use of the proceeds, for any of the purposes contemplated by the language of the resolution.

"I am of the opinion that, taking as true the allegations of the bill of complaint, the injunction asked is timely, and is not premature. It is true in this case that the sustaining of the bill or a temporary restraining order will work no hardship to defendants, nor impede the work of the common council, nor delay any municipal improvement; for the bill seeks to restrain nothing except what defendants admit would be entirely unlawful. The court, however, does not place the decision on that ground, for a court cannot entertain an injunction bill simply because no material injury would accrue to defendants by the injunction; but, on the contrary, the court requires in all cases a sufficient showing to be made of threatened injury entitling the complainant to equitable relief. I think such a case has been shown here by the bill of complaint."

There is little for this court to add to the foregoing

opinion of Judge Wolcott. It is only necessary to consider two arguments apparently not advanced in the circuit court. It was alleged in the bill that the "bonds of the city will be immediately issued and disposed of to innocent purchasers as your orators have good reasons to believe and do believe." It is urged by defendants that their demurrer does not admit the truth of this fact charged, but only complainants' belief of that fact. In support of this contention they cite authorities which assert that a demurrer does not admit facts alleged upon information and belief. All these authorities are based upon the decision of *Trimble* v. *American Sugar Refining Co.*, 61 N. J. Eq. 340. In that case it was said:

"The other allegations of the bill are based upon information and belief, and the defendant argues that an admission of the complainant's information and belief on that subject is not an admission of the fact so stated. In this I think it is substantially sustained by authority."

The court was quite right in saying that there was abundant authority for the proposition that an admission of complainant's information and belief respecting a fact is not an admission of the fact, but it was not justified in applying this principle, as it apparently did, to an allegation of fact based upon information and belief. The distinction has often been drawn between an allegation of fact based upon information and belief (as "your orators further show that the bonds of the city will be immediately issued and disposed of to innocent purchasers, as your orators are informed and believe") and a mere allegation of information and belief (as "your orator is informed and believes that the bonds will be immediately issued," etc.), and it has been held that a demurrer to the former admits the fact alleged (see *Coryell* v. *Klehm*, 157 Ill. 476; *Lucas* v. *Oliver*, 34 Ala. 626; *Wells* v. *Hydraulic Co.*, 30 Conn. 323), while a demurrer to the latter admits only complainant's confidence in the truth of the information (see *Jones* v. *Cowles*, 26 Ala. 614; *Egremont* v. *Cowell*, 5 Beavan, 620). (Our reference to

the latter cases is not to be understood as an expression of approval.)   It would seem that in *Trimble* v. *American Sugar Refining Co.*, supra, the court overlooked this distinction and applied to an averment of fact based on information and belief the law applicable to an averment of information and belief:   We decline to follow that decision and hold the demurrer in this case admitted the fact alleged.

The record kept by defendants shows their purpose to be a lawful one, and defendants contend that complainants cannot prove this purpose to be unlawful without violating the rule which forbids the introduction of parol testimony to impeach the records kept by a municipal council.   The rule referred to applies when the act under consideration must be evidenced by a municipal record, and when a court is determining the meaning of a municipal record (see *Stevenson* v. *Bay City*, 26 Mich. 44; *Moser* v. *White*, 29 Mich. 59); but it has no application to the case at bar.   The question the court is called upon to determine in this case is this: Are municipal agents exceeding their authority ?   This, as already shown, depends upon their purpose.   Evidence which tends to establish that purpose is admissible, though it is not found in, or is inconsistent with, their records.   If it were otherwise, municipal agents could exceed their authority whenever they chose to make false records.   In other words, they could exceed their authority with impunity.

The order of the circuit court overruling the demurrer is affirmed.

McALVAY, GRANT, HOOKER, and MOORE, JJ., concurred.