CARRIER *v.* STATE ADMINISTRATIVE BOARD.

1. EQUITY—PLEADING—INJUNCTION—FAILURE TO NEGATIVE POWER UNDER ACT OF LEGISLATURE FATAL.

   Where a bill by taxpayers to enjoin the State administrative board, the auditor general, and the State Treasurer from expending money in the construction of buildings at various State institutions for which it is claimed no appropriation has been made, failed to negative an exercise of power under Act No. 29, First Extra Session 1921, vesting power in the State administrative board to pay emergency claims occasioned "as a result of damage or disaster to works, buildings, or other property owned by the State," defendants' motion to dismiss the bill should have been granted.

2. SAME—MULTIFARIOUSNESS.

   Said bill, bringing in issue several subjects in no way related except under the broad designation of administrative and political government and policy of the State, *held*, multifarious.

3. SAME—MOOT QUESTION—JUDICIAL NOTICE.

   The power of the State administrative board to expend money for improvements upon the present site of the industrial school for boys in the city of Lansing, claimed by plaintiffs to be in violation of Act No. 143, Pub. Acts 1917, authorizing the sale of the present site, and Act No. 156, Pub. Acts 1919, appropriating $600,000 for the purchase of a new site and for the immediate erection of buildings thereon, becomes a moot question in view of Act No. 311, Pub. Acts 1923, providing that the unexpended balance standing to the credit of said school for outlay for structures and improvements be used for buildings, equipment, and improvements on the present site.

4. SAME—EVIDENCE—COURT MUST TAKE NOTICE OF PUBLIC LAW.

   The court must take judicial notice of a public law rendering moot the question of the legality of defendants' act sought to be enjoined by plaintiffs' bill, although the action of the legislature was taken after the filing of the bill.

5. STATES—INJUNCTION—MERE TAXPAYERS MAY NOT ENJOIN UN-
AUTHORIZED EXPENDITURES OF PUBLIC MONEY TO BE RAISED BY
FUTURE TAXES.

 Mere taxpayers, to save their several properties from
 future taxes incident to alleged proposed unauthorized ex-
 penditures of public money by the State administrative
 board, may not maintain a bill to enjoin same, and the
 filing of such bill conferred no jurisdiction on the court.
 McDONALD, SHARPE, and MOORE, JJ., dissenting.

ON REHEARING.

STATES — ALLEGATIONS SUFFICIENT FOR EQUITABLE RELIEF—MOOT
QUESTION.

 On rehearing it is *held*, that the bill was filed by proper
 parties plaintiff, that it stated a case for equitable relief,
 and that it was not open to attack on motion to dismiss,
 per McDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ.; but
 that by the passage of Act No. 311, Pub. Acts 1923, after
 the filing of the bill, the questions involved have be-
 come moot, and that the bill should therefore be dismissed,
 per WIEST, C. J., FELLOWS, McDONALD, CLARK, BIRD, and
 STEERE, JJ.

Appeal from Ingham; Collingwood (Charles B.),
J. Submitted April 3, 1923. (Docket No. 12.)
Decided July 19, 1923. Re-argued October 25, 1923.
Former opinion affirmed December 19, 1923.

Bill by M. Ralph Carrier and others against the
State administrative board of the State of Michigan
and others to enjoin the expenditure of certain money.
From an order denying a motion to dismiss, defendants
appeal. Reversed.

*Walter S. Foster* (*Charles W. Nichols* and *Seymour
H. Person*, of counsel), for plaintiffs.

*Andrew B. Dougherty*, Attorney General, *Samuel D.
Pepper*, Deputy Attorney General, *Clare Retan, Ernest
C. Smith* and *Carl D. Mosier*, Assistants Attorney
General, for defendants.

MOORE, J. (*dissenting*).   Plaintiffs and appellees, about 20 in number, grouping themselves as citizen taxpayers, filed their bill in the Ingham chancery court to restrain expenditures of money in the construction of buildings at 7 different State institutions. The State administrative board, the auditor general, and the State treasurer, are the only parties defendant in said bill.   A motion to dismiss in the nature of a demurrer was made by the defendants in the lower court.   This motion was overruled and from the order overruling the motion an appeal is taken to this court.

The causes assigned and relied upon in this appeal are:

(1) The bill of complaint is fatally defective for lack of necessary parties.

(2) The bill of complaint is multifarious.

(3) The plaintiff has not stated such a cause of action as will confer jurisdiction to grant an injunction.

(4) The bill of complaint seeks an injunction restraining the acts of the chief executive of the State.

The first three reasons will not be discussed.   The most stress is laid upon the last of these reasons, counsel saying in the brief:

"In the case at bar, the acts complained against, while originating as the acts of the administrative board, yet become the acts of the chief executive by his adoption and promulgation thereof.   The administrative board, under the statute creating it, acts as an advisory body to the chief executive.   The chief executive adopts, or not, their recommendations and their recommendations have no force or validity except by the express adoption of the chief executive.   They are therefore the acts of the chief executive involving discretionary matters and they may not be inquired into or controlled by the judiciary."

The administrative board has a membership of 7 persons.   Section 3 of Act No. 2, Pub. Acts 1921

(Comp. Laws Supp. 1922, § 172 [3]), undoubtedly gives the governor the power practically of vetoing the acts of the administrative board, but it requires action of the board itself to enact any order or resolution.

It may be well at this time to call attention to some of the averments of the bill of complaint.    We quote therefrom:

. "Plaintiffs further show that section 16 [art. 10] of the Constitution of the State of Michigan provides that no money shall be paid out of the State treasury except in pursuance of appropriations made by law, and plaintiffs aver upon information and belief and charge the fact to be that, notwithstanding said constitutional provisions, the said defendant, the State administrative board of the State of Michigan and the said defendant, Oramel B. Fuller, as auditor general of the State of Michigan, and the said defendant, Frank E. Gorman, as State treasurer of the State of Michigan, the last two mentioned defendants acting under and in pursuance of the supervision and control over them given by said Act No. 2 of the Public Acts of 1921 to said defendant, said State administrative board, have paid out from the State treasury and are from time to time paying out from the State treasury and are planning and intending in the future to pay out of said State treasury vast sums of money, aggregating more than one million dollars for purposes for which no appropriation whatever has been made by law or, if any appropriation was so made, sums vastly in excess of such appropriation.    *    *    *

"Yet plaintiffs aver upon information and belief and charge the fact to be, that said State administrative board, notwithstanding all of said acts of the legislature at said sessions of 1917 and 1919 and 1921, and in complete disregard thereof, has recently determined by resolution that said industrial school for boys shall not be removed from said old site in said city of Lansing and that there shall be expended in the building of new permanent structures on said old site with a view to the permanent maintenance thereof the sum of about one million dollars.    Plaintiffs show in this regard that no appropriation whatever has been made by law for such a purpose and that the

expenditure of said sum of one million dollars or any other sum for such a purpose is contrary to the Constitution and laws of the State of Michigan. Plaintiffs further allege in this regard that said State administrative board intends to pay and cause to be paid for the purpose aforesaid out of the general fund in the State treasury said sum of one million dollars unless restrained from doing so by this honorable court, to the great and irreparable injury of the plaintiffs, and that the said defendant, Oramel B. Fuller as auditor general of the State of Michigan, under the order and direction of the said board will draw and cause to be drawn his warrant upon said State treasury for said sum and that the said defendant, Frank E. Gorman as State treasurer aforesaid, will pay and cause to be paid out of the State treasury said sum of money under the order and direction of said State administrative board unless restrained by this honorable court, all of which unlawful acts and doings upon the part of each of said defendants will result in great and irreparable loss and injury to the plaintiffs."

Under the present state of the pleadings these averments must be taken to be true. If true then the plaintiffs are entitled to relief against at least some of the defendants. We think the case cannot be finally decided without a hearing on the merits.

The action of the chancellor should be affirmed and the defendants given twenty days from the filing of this opinion in which to answer. No costs should be allowed in the case.

McDONALD and SHARPE, JJ., concurred with MOORE, J.

WIEST, C. J. I have not reached the conclusion stated by Mr. Justice MOORE. Under the Constitution the legislature holds the public purse string and loosens it by appropriations. Appropriations are usually specific in amount and for designated purposes. I apprehend that, if for designated purposes, it is not

essential that specific amounts need always be fixed. The legislature may anticipate an emergency and provide a method of meeting the expense thereof. Act No. 29, first extra session 1921 (Comp Laws Supp. 1922, § 172 [11-13]), does this very thing and vests power in the State administrative board to pay emergency claims occasioned "as a result of damage or disaster to works, buildings or other property owned by the State." The injunction bill nowhere negatives an exercise of power in pursuance of this statute by the State administrative board, or that the fund, to meet such emergency claims, is exhausted. The bill is multifarious. It brings in issue several subjects in no way related except under the broad designation of administrative and political government and policy of the State. If this bill is upheld it brings into court for consideration and review not alone the acts of the State administrative board but as well the underlying acts of the State welfare department governing each of the State institutions mentioned in the bill and the commissions acting under such department and having control, to a certain extent, of the funds pertaining to each institution and under duty to present emergency financial needs to the State administrative board. See Act No. 163, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 1989 [1-20]).

In this opinion I shall confine my discussion to the allegations in the bill relative to the industrial school for boys. The legislature in 1921 appropriated $600,000 for the two fiscal years ending June 30, 1923, for the purpose of outlay for structures and improvements for the industrial school for boys, to be used "subject to the approval of the State administrative board." Act No. 251, Pub. Acts 1921. Plaintiffs' bill, evidently, is on the theory that, at the session of the legislature in 1917, the board of trustees of the

industrial school for boys were granted authority to sell the site of the school and lands used in connection therewith, on such terms, for such amounts and in such portions as they should deem best, and use the proceeds in purchasing a new site for the school and the erection of suitable buildings thereon.  Act No. 143, Pub. Acts 1917 (Comp. Laws Supp. 1922, § 1918 [1-3]).  As I understand the bill with reference to the industrial school for boys, it is claimed the State administrative board has no power to expend any funds upon the present site of the school in the city of Lansing.  In 1919 the legislature appropriated $600,000 for the purpose of purchasing land and to enable the board of control of the industrial school for boys to immediately begin the erection of the necessary buildings thereon.  Act No. 156, Pub. Acts 1919.  In 1921 the legislature by act provided that all unexpended balances of the $600,000 appropriation of 1919 for purchasing a new site for the school be repealed and charged out of the account to which they were credited.  This act took effect in April, 1921.  Act No. 27, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 261 [1-3]).  The act of 1917, granting authority to sell the site of the school in such portions as the board of trustees should deem best, contained no command to sell and set no time. The school is still at the old site, functioning as usual, and the land and buildings, except the chapel and a parcel of land sold to the board of education of the city of Lansing, belong to the State.  Passing the appropriation of $600,000 in 1919 for want of knowledge as to action thereunder, we come to the appropriation of $300,000 for the fiscal year ending June 30, 1922, and a like amount for the year ending June 30, 1923, and turn to the act for an expression of purpose, and find the $600,000 was appropriated for outlay for structures and improvements for the industrial school

for boys, to be used subject to the approval of the State administrative board. Where was the industrial school for boys located when the legislature made the appropriations? Right where it is now and has been for many years. But it may be said it was the intention to spend the money on the new site. If so, it would have been easy to have made such direction. At this point we run into a political question, involving administrative policy and answered by the general appropriation bill passed at the 1923 session of the legislature. While this action of the legislature was taken after the filing of the bill herein it is a public law and we must take notice thereof. This act renders the principal question involved, so far as the industrial school for boys is concerned and the removal thereof to a new site, a moot one. Act No. 311, Pub. Acts 1923, provides:

"Industrial School for Boys:
"The unexpended balance standing to the credit of said institution for outlay for structures and improvements is hereby appropriated and authorized to be used for buildings, equipment and improvements on the present site of the industrial school for boys in the city of Lansing."

Just to what extent the general appropriation bill renders moot the questions raised as to the expenditures for other public institutions, I have not searched out. The allegations in the bill are of such a general character as to afford little help. The provision of the Constitution invoked by the plaintiffs has its roots deep in American history. It originated in the American colonial legislative bodies under British governors and was so firmly established at the time of the American revolution as to constitute a part of the fundamental law. It is the duty of the courts to enforce this law of the Constitution in a proper case. Plaintiffs filed the bill as taxpayers to save their

several properties from future taxes incident to the alleged unauthorized expenditures.   Mere taxpayers may not file such a bill, and the bill herein conferred no jurisdiction upon the court.   *Miller* v. *Grandy*, 13 Mich. 540; *Frothingham* v. *Mellon*, 262 U. S. 447 (43 Sup. Ct. 597), decided June 4, 1923.

For the reasons expressed the motion to dismiss should have been granted.

FELLOWS, BIRD, and STEERE, JJ., concurred with WIEST, C. J.   CLARK, J., concurred in the result.

### ON REHEARING.

MOORE, J.   Upon this rehearing I desire to add to what I said in the original case.   This court has many times held that taxpayers may maintain a bill of complaint to enjoin the unlawful expenditure of public funds.   Some of the cases are *Curtenius* v. *Hoyt*, 37 Mich. 583; *George* v. *Electric Light Co.*, 105 Mich. 1; *Savidge* v. *Village of Spring Lake*, 112 Mich. 91; *Bates* v. *City of Hastings*, 145 Mich. 574; *McManus* v. *City of Petoskey*, 164 Mich. 390; *Thomas* v. *Board of Sup'rs of Wayne Co.*, 214 Mich. 91.

It is now said that because of the subsequent act of the legislature the case has become a moot case. The averments in the bill of complaint should be recalled.   It is stated in the bill of complaint that more than one million of dollars is to be unlawfully expended.   The defense relies upon the provisions of Act No. 311, Pub. Acts 1923, Act No. 29, Pub. Acts 1921, 1st Ex. Sess. (Comp. Laws Supp. 1922, § 172 [11-13]), and Act No. 251, Pub. Acts 1921.

What are these provisions?   The material part of Act No. 311 reads:

"Industrial school for boys:
"The unexpended balance standing to the credit of said institution for outlay for structures and improvements is hereby appropriated and authorized to be

used for buildings, equipment and improvements on the present site of the industrial school for boys in the city of Lansing."

To understand what the unexpended balance referred to is, we must turn to Act No. 251, Pub. Acts 1921; the language which is material here reads:

"Outlay for structures and improvements: (To be used only when ordered by the State administrative board) $300,000.00 for the year ending June 30, 1922, and $300,000.00 for the year ending June 30, 1923."

This is the only unexpended balance which was standing to the credit of the industrial school when Act No. 311, Pub. Acts 1923, became a law, so that it is clear that if the averments of the bill are to be regarded as true, that it is proposed to make an expenditure of $400,000 for which no appropriation has been made. To meet this situation counsel invoke the provisions of Act No. 29, Pub. Acts 1921, 1st Ex. Sess., relating to emergency claims and quote the provisions reading:

"The term 'emergency claim' shall be construed to be and refer to such claims only as may be presented as a result of damage or disaster to works, buildings or other property owned by the State, or as a result of epidemic of disease menacing the life and health of the people, costs of legal proceedings of the attorney general's department, or as a result of the lack of sufficient appropriations for the State institutions with which to supply the necessary fuel, food and clothing, and which results were caused by unforeseen circumstances after the adjournment of the legislature."

We quote from the brief of counsel:

"The legislature, by Act No. 29, Pub. Acts 1921, first extra session, empowers the State administrative board to determine what are emergency claims. Such claims when so determined shall be paid 'out of any

fees and special taxes in the State treasury.' The board is authorized thereby to order payment for construction of every building and structure mentioned in the bill of complaint, providing only there are any moneys in the treasury received from fees and special taxes."

We think this construction is far fetched and if it is to prevail the legislature may as well abdicate its function when making appropriations for the construction of State buildings to appropriate a definite sum for a specific purpose, and leave it all to the judgment of the administrative board.

I think the bill of complaint states a case for equitable relief and that defendants should be required to answer, and that there should be a hearing on the merits.

SHARPE, J., concurred with MOORE, J.

WIEST, C. J.   We are content with our former opinion dismissing the bill.

Since the filing of the bill the legislative power of the State government, acting within its province, has determined that the industrial school for boys shall remain in the city of Lansing, and appropriated for buildings, equipment and improvements on the present site the unexpended balance standing to the credit of the institution.   The legislature clearly intended to end this suit, and we must accept the legislation on the subject as conclusive and, therefore, treat the allegations in the bill as rendered moot thereby.

The bill is dismissed.

STEERE, J., concurred with WIEST, C. J.

CLARK, J. (*concurring*).   I agree with Justice MOORE that the bill was filed by proper parties plaintiff, that it stated a case for equitable relief, and that it was not open to attack on motion to dismiss.

But, practically, because of subsequent legislation, the case is now moot, and for this reason I concur in the result reached by Chief Justice WIEST.

McDONALD and BIRD, JJ., concurred with CLARK, J.

FELLOWS, J.    I agree that the order in this case must be reversed and the bill dismissed.    By the action of the legislature the case has become moot. I reserve opinion as to the power of the court at the suit of a taxpayer to restrain official action of superior State officers.