## ATTORNEY GENERAL *v.* CITY OF DETROIT.

MUNICIPAL CORPORATIONS—EQUITY JURISDICTION—SUIT BY ATTORNEY GENERAL.

An information by the attorney general will not lie to compel municipal officers to repay into the city treasury moneys which they have unlawfully taken therefrom.

Appeal from Wayne; Hosmer, J. Submitted October 10, 1895. Decided November 19, 1895.

Information by Adolphus A. Ellis, Attorney General, against the city of Detroit, and Hazen S. Pingree, mayor, Clarence A. Black, controller, and George Beck and William B. Thompson, aldermen, of said city, to compel the repayment of certain moneys alleged to have been taken unlawfully from the city treasury. From a decree dismissing the information on demurrer, the informant appeals. Affirmed.

*James H. Pound,* for the informant.

*John B. Corliss, Thomas T. Leete, Jr., William S. Sheeran,* and *John J. Speed (C. A. Kent,* of counsel), for defendants.

LONG, J. This is an information by the attorney general of the State to compel the payment into the city treasury of the city of Detroit of certain moneys, which it is claimed the defendants, as city officers, unlawfully took therefrom. The information sets out at great length the several acts complained of as occurring during the years 1890 to 1893, inclusive, in which it is claimed that Mr. Pingree, as mayor, Mr. Black, as controller, and the other defendants, as aldermen of the city, took the funds unlawfully, and used them for purposes contrary to law. The prayer of the information is that the

defendants may be decreed to hold these several sums of money in trust for the city of Detroit, and that they be compelled to repay the same into the city treasury, and that the city answer by what right it permits its moneys to be expended contrary to law. The information was filed in the Wayne circuit court. The defendants demurred, and the demurrer was sustained. Two grounds are urged as sustaining the action of the court below: (1) That the information is multifarious; (2) that it sets up no ground for equitable relief.

We may pass over the first question, as we are satisfied that the information cannot be sustained in any event. It is sought to bring the case within the ruling in *Attorney General* v. *City of Detroit*, 26 Mich. 263. That proceeding was not to compel repayment of moneys illegally paid out, but was based upon what was called the preventive jurisdiction of the court, and was instituted to keep public officers from proceeding illegally, as was claimed, in reference to a fund applicable to a particular public object. The information in the present case seeks to compel the payment of money by the defendants, which, it is averred, belonged to the city. It was held in *Attorney General* v. *Moliter*, 26 Mich. 444, that such a claim is strictly of the class cognizable in the common-law action of money had and received, and from its nature is susceptible of prosecution in that form by the county. It was said in that case:

"The bill before us in the name of the attorney general is attempted to be used to work out for the county precisely the end of such an action. The title to the claim, both legal and equitable, is exclusively in the county. If collected, the money must be instantaneously paid into the county treasury, and no State agency or official can touch or control it. If still treasurer, the defendant Hopper must immediately have charge of it. The law having ordained the custody, the court could not institute one; and it is not unworthy of notice in passing that, for all that appears, Hopper is still treasurer, and, upon the theory of the bill, a party to be compelled to make

payment into his own official hands, through suit by the attorney general. In view of the nature of the claim, I am unable to find that the State has any right, through the attorney general, to sue in equity for it. Under existing regulations, it is not in its civil aspect a matter of State concern, but is rather a local corporate interest or right of action, subject to be sued for the county. It has not hitherto been deemed politic, or consistent with the genius of our system, to favor a large construction of the power of the State to directly superintend the fiscal affairs of local communities. But if, as now maintained, the State may independently intervene, and commence and carry on a suit by and through its own officer to collect money for a county, on the charge that such money was illegally paid out, the principle must have a very extensive operation. As neither our laws nor Constitution in terms profess to confer any such power or impose any such duty, and the power, if it exists at all, must result from the nature of the thing and the principles of the government, it cannot be admitted to exist without admitting a basis for it broad enough to justify State interference in every case where it is charged that the funds of a township or any other municipal corporation have been illegally appropriated. The principle being settled, the attorney general, whenever a case appears to be within it, will feel bound to allow the use of his name; and, in the absence of legislation to restrain and regulate the proceedings, the cases will multiply, and the practice will cause serious embarrassment and expense, without corresponding advantage. Merely local financial matters, often trivial in amount and devoid of State interest, will become common subjects of chancery litigation in this way to test the validity or regularity of municipal action, and not seldom chiefly to gratify a litigious temper. There are, then, in the composition of the claim, in the irrelation of the State to it, and in the consequences to be apprehended under existing conditions from such State interference with municipal autonomy, very serious objections to the relief asked through a modification of the decree."

We are unable to distinguish the present case from that. That case was decided in 1873, and for more than 20 years has been acquiesced in as the settled law of this State. The legislature has taken no action in reference

to the question, or attempted in any way to enlarge the powers of the attorney general to that end, even if it could constitutionally do so, which we do not determine. The case falls so clearly within the Moliter case that further argument than there used is unnecessary.

The decree below must be affirmed.

McGRATH, C. J., MONTGOMERY and HOOKER, JJ., concurred. GRANT, J., did not sit.