THOMAS *v.* BOARD OF SUPERVISORS OF WAYNE COUNTY.

1. RECORDS—EVIDENCE—TRACT INDEX—ALPHABETICAL INDEX—NE-
CESSITY—STATUTES.

In a suit by taxpayers to test the right or power of a county
to establish and maintain a tract index and to make and
furnish abstracts of title to land in said county, evidence
*held*, to show a necessity for a tract index as authorized
by Act No. 79, Laws 1841 (3 Comp. Laws 1915, §§ 11789,
11790), as well as an alphabetical or grantor and grantee
index, the keeping of which was made mandatory by
section 28, chap. 65, Rev. Stat. 1846 (3 Comp. Laws 1915,
§ 11720).

2. SAME—STATUTES—CONSTRUCTION—LIMITATIONS.

The act of 1841, granting broad powers to boards of super-
visors to take action whenever in their judgment they
should deem it advisable to do so, to make and maintain
a tract index cannot be assumed to have been intended
to be limited to the relief of conditions then existing, but,
never having been repealed, is now in full force and effect.

3. SAME—STATUTE PROVIDING FOR TRACT INDEX NOT REPEALED.

The act of 1841 not having been expressly repealed by
section 28, chap. 65, Rev. Stat. 1846, and being in no way
repugnant thereto, *held*, to be still in full force and effect.

4. EVIDENCE—JUDICIAL NOTICE—ABSTRACTS COPIES OF PUBLIC
RECORDS.

The court will take judicial notice that in many counties the
abstracts prepared by private abstracters are made out on
a form similar to that of a county tract index, which
describes the land, the names of grantor and grantee,
kind of instrument, consideration, date of instrument,
date of record, book and page of record and whether
there is a building restriction, with an additional column
for remarks, so that an abstract is simply a copy or dupli-
cate of the tract index page or pages.

5. RECORDS—CERTIFIED COPIES OF PUBLIC RECORDS MAY BE SECURED
—ABSTRACTS.

The tract index as prepared by the county, being a public

On right of taxpayer, in absence of statute, to enjoin unlaw-
ful expenditures by municipality, see note in 36 L. R. A. (N.
S.) 1.

record, a certified copy of any page or pages thereof may be procured by paying therefor, and where incomplete, in not affording full information as to special provisions in the instruments recorded, certified copies of such instruments may also be procured, and thus an examiner would have the same information as would be contained in the completed abstract which the county proposes to furnish.

6. COUNTIES—FURNISHING COPIES OF PUBLIC RECORD A LOCAL CONCERN—ABSTRACTS.

The furnishing by the county of such information as is contained in its tract index and instruments of public record, being purely a matter of local concern, in which neither the State as a whole nor any person other than a taxpayer of the county has any interest, the board of supervisors may lawfully provide for furnishing such information in the form of a certified abstract.

7. SAME—FURNISHING COPIES OF RECORDS NOT "ENGAGING IN BUSINESS"—ABSTRACTS.

In furnishing abstracts as proposed, the county will not be "engaging in a business," as that expression is used in commercial transactions, but will be merely furnishing certified copies of its public records in form suitable and convenient for examination, and will be extending its service to the public by giving to landowners of the county the benefit and advantage of the large sums of money already lawfully expended in the preparation of the tract index.

8. SAME—FURNISHING ABSTRACTS NOT INHIBITED BY CONSTITUTION OR STATUTE.

When action is taken by a State or one of its municipal subdivisions, manifestly in the interest of its people as a whole, and the rights of individuals are not abridged thereby, and such action is not within the inhibition of some constitutional or statutory provision, it should be upheld as a valid exercise of authority, though lacking in any positive grant of power to support it, hence a county may, by ordinance, provide for furnishing abstracts of title.

9. SAME—CONSTITUTIONAL AND STATUTORY DUTIES OF REGISTER OF DEEDS MAY NOT BE TRANSFERRED.

In view of the constitutional provisions (Art. 8, § 3) for the

election of a register of deeds, and the general law prescribing his powers and duties (1 Comp. Laws 1915, § 2472 *et seq.*, and 3 Comp. Laws 1915, § 11711 *et seq.*) and especially Act No. 79, Laws 1841, authorizing the preparation and maintenance of a tract index by the register of deeds, the provisions of an ordinance of the county of Wayne attempting to create a tract index department and conferring upon the superintendent thereof powers and duties by law prescribed as part of the powers and duties of the register of deeds, must be held to be void if said superintendent is a person other than the register of deeds or a deputy appointed by him.

10. SAME—RIGHT OF TAXPAYERS TO QUESTION VALIDITY OF ORDINANCE PROVIDING FOR PAYMENT OF MONEY.

Plaintiffs, as taxpayers of a county, have a right to question the validity of an ordinance providing for the furnishing of abstracts of title since in the payment of salaries to officers and clerks it must be assumed that they as taxpayers will be damaged.

FELLOWS, J., dissenting.

Appeal from Wayne; Webster (Arthur) and Codd (George P.), JJ. Submitted January 5, 1921. Docket No. 38.) Decided April 6, 1921.

Bill by William S. Thomas and others against the board of supervisors of Wayne county and others to enjoin the maintenance of a tract index and the furnishing of abstracts of title to land. From the decree rendered, all parties appeal. Modified and affirmed.

*Beaumont, Smith & Harris,* for plaintiffs.

*Matthew H. Bishop* and *Paul W. Voorhies,* Prosecuting Attorneys (*Thomas G. Long* and *William L. Carpenter,* of counsel), for defendants.

SHARPE, J. This suit is brought by the plaintiffs, who are taxpayers of the county of Wayne, to test the

right or power of the county to establish and maintain a tract index and to make and furnish abstracts of title to lands in that county. On September 18, 1913, a petition was presented to the board of county auditors by certain real estate dealers and brokers, requesting that a complete abstracter's tract index of the lands in the county be compiled and placed in the office of the register of deeds for use of the county officials and the general public. It was represented in the petition that there were but two corporations in the county engaged in the furnishing of abstracts of title and that the demands therefor were so great that much delay and consequent inconvenience to the public resulted therefrom. This petition was presented by the county auditors to the board of supervisors at its next session. The matter was referred to a committee of the board, who reported, recommending that the county auditors begin at once "the compiling and installing of an abstracter's tract index or geographical index in the register of deeds' office, with full supervision of the plans and work for said index." This report was adopted and an appropriation of $35,000 made to begin such work. Reports of progress were made to the supervisors from time to time and additional appropriations made. At the hearing in the trial court it appeared that about $400,000 had been expended in the furtherance of the work.

On October 28, 1919, the board of supervisors adopted an ordinance entitled:

"An ordinance to establish a department of the county government of the county of Wayne, to be known as the Wayne county tract index department, to provide a penalty for a violation of the provisions thereof, and to repeal all ordinances or parts of ordinances in conflict herewith."

This ordinance contains 15 sections and provides with somewhat minute details for the accomplishment of the purpose outlined in its title. The purpose of the index was stated in section 7 to be:

"It being the intent and purpose of this ordinance to have such 'tract index' contain a full and complete history of the title to every piece, parcel, tract or subdivision of land lying and being within the county of Wayne, and to continue and perpetuate such history."

Section 8 makes it the duty of the superintendent of such department to furnish any person upon request an abstract of title to any land in the county and to attach thereto a certificate to the effect that every instrument recorded or filed in the office of the register of deeds affecting the title to such land has been entered therein. Section 9 provides that the superintendent, under the regulation of the board of county auditors, shall fix the price to be paid for all abstracts furnished by the department and may also prescribe a schedule of fees for searches and certificates where no complete abstract is made, all moneys received by him to be paid by him, daily, into the county treasury.

Soon after the adoption of such ordinance, and on February 25, 1920, the plaintiffs filed the bill of complaint herein, praying that the board of supervisors, the board of county auditors, and the county treasurer, who are made defendants, be restrained from continuing such work and from appropriating or paying out any of the moneys of the county in furtherance thereof. The defendants, answering, while admitting in substance the averments in the bill as to the work done, allege that the purpose of the action of the board of supervisors in establishing the tract index was "based upon considerations arising from the convenience and necessities of the public" in quickly ascertaining the title to lands in the county and "the utility

of such index in and of itself to the people of the county of Wayne," and that the adoption of the ordinance, with the provisions therein contained relative to furnishing abstracts of title,—

"was wholly based upon practical considerations arising from existing conditions, there being but two (2) sources of procuring abstracts in the county, the long wait to which all persons were subjected after giving an order, before it was filled, and the large cost and expense to every person of procuring such service from one of such abstract companies,"

and that—

"The furnishing of abstracts is but the furnishing of certified copies of excerpts from the public records, a service which has been performed by public officers. from time immemorial."

A hearing was had at which much testimony was taken and a decree made by the trial court in which the power of the board of supervisors to install the tract index as prepared was upheld but the authority to provide for the furnishing of abstracts was denied. From this decree all parties appeal.

1. Tract Index. In the early years of government in this country, but little attention was paid to real estate titles. The grantee received from the grantor a warranty deed of the premises conveyed. This was usually accompanied by the muniments of title held by the grantor, consisting of the original conveyances in the chain of title and discharges of any mortgages, liens or levies which had been placed thereon. While the law in the several States and Territories early provided for the recording of all matters affecting the title, such records were but little consulted. The transfers were infrequent and in most cases possession had been held for a sufficient length of time to ripen into a title. But, as the country developed and commercial activity increased, the transfers be-

came more frequent, and with the increase in values conflicting .claims of title became not infrequent and the rights under them were in many cases dependent upon an accumulation of evidences of title, which required a careful examination and a considerable degree of skill on the. part of the examiner to arrange and classify as well as to interpret and adjust. It became no longer practical, in most cases, to determine the nature of a title by an inspection of the original documents and recourse must perforce be had to the public records, which were given the same probative force and effect as the original documents copied therein.

The necessity of providing a means by which an effective search of such records might be had gave rise to the enactment of laws in 1841, and, later, in 1846, the former being permissive and the latter mandatory. They read, as follows:

Act No. 79, Laws of 1841 (3 Comp. Laws 1915, §§ 11789, 11790) :

"SECTION 1. *Be it enacted by the senate and house of representatives of the State of Michigan,* That the county commissioners of the respective counties of this State be, and they are hereby authorized, if, in the opinion of the commissioners, they shall deem it necessary, to cause the registers of their respective counties to prepare a general index to all books in their offices, used for the purpose of recording deeds, mortgages, and other instruments, in order that the records containing the title of lands may the more easily be preserved, and a search of said records, to ascertain such title facilitated; and the said registers shall receive for their compensation such sum as the county commissioners may deem just and right.

"SECTION 2. That no compensation shall be allowed for indexing in the general index, deeds, mortgages, and other instruments, that shall be left for record, after the general index books shall be furnished to the registers of the respective counties, or when said books may have been already furnished, and the

registers are hereby required, without charge, to index all such deeds, mortgages and other instruments, in said general index."

Section 28 of chapter 65, Revised Statutes of 1846 (3 Comp. Laws 1915, § 11720):

"Every register of deeds shall also keep a proper general index to each of the sets of books, in which he shall enter, alphabetically, the name of every party to each and every instrument recorded by him, with a reference to the book and page where the same is recorded." * * *

The alphabetical index proved serviceable. It was referred to in *Edwards* v. *McKernan,* 55 Mich. 520 (decided in 1885), as affording "ready means of information to purchasers investigating the title to land." But, as the records increased in volume, this index proved inadequate to satisfy the demand for accurate information, and in many of the counties the index provided for in the law of 1841 was installed and has since been maintained. It is spoken of as a tract index, geographical index, sectional index, and abstract book. The only substantial difference between it and the alphabetical index is that in the former the documents as recorded are minuted in columns on pages, the caption of which contains the particular description of the land conveyed, and in the latter under the surname of the grantor and grantee. While substantially the same facts appear in the alphabetical index, the greater convenience, for the purposes of search, of having the information listed in a record, each page of which is devoted to a particular tract or section, is apparent. The importance of the tract index in the preparation of an abstract of title and its practical value when kept up by the county is thus stated by Mr. Warvelle:

"No perfect abstract can be compiled without the assistance of a carefully prepared tract index * * *

and should the county records be supplemented with this indispensable adjunct, the searcher will have less difficulty and experience more satisfactory results." Warvelle on Abstracts (4th Ed.), § 67.

The proofs show that the alphabetical, or grantor and grantee, index, as it is sometimes called, is of little assistance at the present time in the search of records in the county of Wayne. This county has now a population of about 1,250,000, and the valuation of its property, as fixed by the State board of equalization for the year 1919, was $1,589,300,000; more than 35 per cent. of the valuation of the entire State. The area of the county is 630 square miles, of which more than 78 are in the city of Detroit. There are in the entire county about 5,700 subdivisions which have been platted, consisting of upwards of 500,000 lots. There were 91,298 instruments recorded from December, 1918, to November, 1919. Mr. Burton, one of the plaintiffs, estimated that such transfers in the city of Detroit exceeded those in any other city in this country, with the possible exception of Chicago.

These figures clearly demonstrate the necessity of some means of determining titles other than that afforded by the alphabetical index. If the people of the county may not provide other means, it remains that they are at the mercy of those owning private indexes to afford them the information necessary to complete a transfer of real estate.

Mindful of these considerations, let us now examine the act of 1841, under which the board of supervisors defends its action. This law has appeared in our statutes for 80 years and many counties, acting under the power therein conferred, have maintained a "general index" similar in all essentials to that now being prepared in the county of Wayne. It is our duty to ascertain the meaning of and to give full force and effect to the statute. We must not overlook the pur-

pose of its enactment. The intention of the legislature, clearly expressed in the act, was to permit such an index to be prepared and maintained—

"in order that the records containing the title of lands may the more easily be preserved, and a search of said records, to ascertain such title facilitated."

The tract index is designed to accomplish this purpose and a reading of the record clearly demonstrates the utility of the work in this respect. It is a "general index" to all books in the office used for the purpose of recording instruments relating to the title to real estate. Calling it a set of abstract books is but seeking to confuse the mind. The name has no significance. By it the purpose of the act is fulfilled in every particular. We can conceive of but two ways in which an index to the title to lands may be prepared. One of these is the alphabetical index provided for in the act of 1846, the other an index in which the instruments recorded shall be noted under a caption for each particular tract of land. If the act of 1841 does not authorize the preparation of a tract index, we can see no reason why the mandatory act of 1846 was enacted. Presumably, the legislature was aware that in many counties the tract index was not being maintained and in its wisdom it made provision that an alphabetical index must be kept up. It is urged that this act was passed in view of the conditions then existing, due to the transfer of the records from one office to another. If we concede that such conditions impelled the legislature to act, we have no right to assume that a statute granting power in broad and general terms was intended to be limited in its application to the relief of such conditions. It is permissive only. It grants authority to the commissioners, now the boards of supervisors, to take action whenever, in their judgment, they shall deem it advisable to do so. If such

214—Mich.—6.

action could have been taken immediately upon the act taking effect, as was done in several counties, it may be taken at any time a board of supervisors so determines.

The owners of lands in Wayne county have expended large sums of money in recording the conveyances affecting their titles. While a statement of the fees paid therefor in any one year does not appear in the record, if we assume an average of 75 cents (that usually charged for a short form warranty deed) for each document recorded in the year 1919, it amounts to more than $68,000. The purpose of this large expenditure is to secure safety for their muniments of title. The people of the county, through its representatives, the board of supervisors, now propose by means of this tract index to make these records available to those interested in ascertaining the condition of the title to any particular description. The cost of keeping it up will be comparatively trifling. A clerk, with the instrument before him, will in a few minutes enter the facts contained in it in the blank spaces provided therefor on the page of the index. Where a will, court order, contract or conveyance containing special provisions is recorded, more time will be required, but the charge for recording will more than compensate for this service and no hardship be imposed on a register of deeds if paid by the fees for recording instead of by a salary.

Counsel for plaintiffs insist that the law of 1841 was repealed by that of 1846. This act has been included in every compilation of the statutes since that time and appears in the Compiled Laws of 1915 as sections 11789 and 11790. As has been stated, a considerable number of counties have authorized and continued action thereunder. It may also be noted that Judge COOLEY in his preface to the Compiled Laws of 1857 states, in effect, that this and other acts enacted

prior to 1846 were included therein because not repealed by the Revised Statutes of 1846. We feel constrained to hold that the act of 1841, not having been expressly repealed and being in no way repugnant to the provision in the law of 1846 providing for an alphabetical index, is still in full force and effect, and that it confers the power now being exercised by the board of supervisors in preparing and maintaining the tract index.

2. Abstracts. The tract index, as prepared in Wayne county, under appropriate headings, gives the following information as to each conveyance under a caption in which the particular parcel of land is described: Name of grantor, name of grantee, kind of instrument, consideration, date of instrument, date of its record, liber and page on which recorded, whether or not there is a building restriction, with an additional column for remarks. Unless there be some special provision in the instrument recorded, a copy of such entry would in itself make a complete abstract of the document. We may take judicial notice that in many counties the abstracts prepared by private abstracters are made out on such a form and in the column for remarks all unusual provisions and omissions or defects in execution are inserted, the abstract being simply a copy or duplicate of the tract index page or pages. The writer of this opinion has seen abstracts which were but a photographic copy of such pages. In other counties, the abstracts consist of a series of pages in which the facts noted on the tract index are set out, thus forming a condensed history of the title to the land. There is nothing, however, which will appear upon such an abstract that is not copied from the records of the county. The tract index as prepared is a public record. A certified copy of any page or pages of it may be procured by paying therefor. Where it is incomplete, in not affording full

information as to special provisions in the instruments recorded, a certified copy of such instruments may also be procured. The examiner of titles would, by procuring these, have the same information as is contained in the completed abstract, which the county proposes to furnish. For the convenience of the owners and prospective purchasers of lands in the county, May not the board of supervisors provide for furnishing the information desired as to these special matters? It is purely a matter of local concern. Neither the State as a whole nor any person other than a taxpayer of Wayne county has any interest in the matter. The county having lawfully expended a large sum in the preparation of the tract index, May it not provide for giving its people the benefit of such expenditure by furnishing them the information desired in the form proposed? We so conclude. The recording of documents and the preparation and keeping up of the tract index were provided for as a service to the people. To meet the present demand, that service may now be extended to give the landowners of the county the full benefit and advantage of the moneys expended. In furnishing abstracts as proposed, the county will not be "engaging in a business" as that expression is used in commercial transactions. In that it will thereby serve the public it may be called a public utility, but the work proposed is merely the furnishing of certified copies of the public records in a form suitable and convenient for examination by those interested in them.

Counsel for the plaintiffs urge that *Traverse City* v. *Railroad Commission*, 202 Mich. 575, *City of Kalamazoo* v. *Titus*, 208 Mich. 252, and *Clements* v. *McCabe*, 210 Mich. 207, are controlling as to the right of the county to furnish abstracts. The two former involved the power of the cities to fix the rates for service of public utilities, and it was held that no such power had

been delegated by the legislature in express terms. The latter, the zoning case, involved an exercise of police power by the city. Such power, independent of the Constitution, is lodged in the legislature. It was held, that a delegation thereof to the city must be specific in its terms and was not included in a constitutional provision conferring upon cities a greater degree of self-government nor in an act of the legislature, general in its terms, adopted pursuant thereto. In all three, the property rights of others were involved. The power sought to be exercised was not of a local legislative or administrative character, but affected rights dependent upon legislative action and control. The distinction is apparent. The reasoning of this court in *Andrews* v. *City of South Haven*, 187 Mich. 294 (L. R. A. 1916A, 908, Ann. Cas. 1918B, 100), is more applicable. It was there held that under the power conferred on a board of public works of a city to construct, manage, supervise and control an electric lighting plant it might keep on hand a stock of electrical fixtures and accessories and sell the same to the citizens.

We are of the opinion that there is no legal impediment to prevent the county of Wayne furnishing abstracts of title to the landowners of the county. The conclusion we have reached is but in accord with the trend of modern thought and judicial decision. When action is taken by a State or one of its municipal subdivisions, manifestly in the interest of its people as a whole, and the rights of individuals are not abridged thereby, and such action is not within the inhibition of some constitutional or statutory provision, it should be upheld as a valid exercise of authority, though lacking in any positive grant of power to support it. One of the purposes of a government such as ours is to promote the public welfare. The power to act, in doing so, is not confined to the suppression of what is harm-

ful. It extends to providing appropriate facilities for making available to the public need all of the property and agencies of the government, whether National, State or municipal.

3. Tract Index Department. Having concluded that the action of the board of supervisors, in causing the tract index to be compiled and in providing for the furnishing of abstracts of title, is warranted, May it continue such work under the plan provided therefor in the ordinance? We have heretofore referred to some of its provisions. It is set forth in full in the margin.[1]

In considering the validity of this ordinance it must be borne in mind that the authority to compile the tract index rests on the power conferred by the act of 1841. Under it the boards of supervisors were empowered "to cause the registers of their respective counties" to prepare the index. When completed, it became the duty of the register to enter thereon all

[1]An ordinance to establish a department of the county government of the county of Wayne, to be known as the Wayne county tract index department, to provide a penalty for a violation of the provisions thereof, and to repeal all ordinances or parts of ordinances in conflict herewith.

It is hereby ordained by the board of supervisors for the county of Wayne, State of Michigan:

SECTION 1. There is hereby established a department of the county government of the county of Wayne to be known as the "Wayne county tract index department."

SECTION 2. The board of county auditors shall, as soon as may be after this ordinance takes effect, appoint a suitable person to act as superintendent of said department. Said superintendent shall hold office for a period of two years from and after the day of his appointment. And said superintendent shall, before entering upon the duties of his office, file in the office of the board of county auditors, an official bond for the proper performance of the duties of his office and to account for all moneys coming to his hands by reason thereof, said bond to be in such sum and with such sureties as the board of county auditors shall direct and approve. Said superintendent may be removed

instruments thereafter recorded without charge.   The
present Constitution (Art. 8, § 3) provides for the
election biennially of a register of deeds in each organ-
ized county, "whose duties and powers shall be pre-
scribed by law."

While under the general law the compensation of
registers of deeds is in the way of prescribed fees,
Act No. 381, Local Acts of 1879, provides for an
annual salary to be fixed by the board of county
auditors of the county of Wayne.  The fees prescribed
are to be collected and turned into the county treasury.
Section 8 of this act authorizes the county auditors to
prescribe the number of deputies or clerks to be em-
ployed and to fix their compensation.  These are, how-
ever, to be appointed by the register of deeds.  The
duties of the register as prescribed by law will be
found in the general law relating to county officers
(1 Comp. Laws 1915, § 2472 *et seq.*) and in the re-
cording laws (3 Comp. Laws 1915, § 11711 *et seq.*).

at any time by the board of county auditors for cause, but not
until he shall be given an opportunity to be heard in his defense.

SECTION 3. Said superintendent is hereby authorized to appoint
an assistant superintendent and such other assistants, clerks and
subordinates as may be deemed necessary and proper.   Such
assistant superintendent, when so appointed, shall hold office dur-
ing the pleasure of the superintendent.   And said superintendent
may dismiss any assistant, clerk or employee of said depart-
ment when he shall deem it advisable.

SECTION 4. The   superintendent,   assistant   superintendent,
clerks, assistants and other subordinates employed in said de-
partment shall receive such compensation as may be determined
by the board of supervisors.

SECTION 5. It shall be the duty of the board of county auditors
to provide offices, furniture, telephones, safes, or vaults, heat,
light and all necessary books, blanks, files, stationery and other
equipment and supplies for the use of said department.

SECTION 6. Said superintendent shall have the care and
custody of all books, records, papers and documents pertaining
to said department, and it shall be his duty to securely keep
the same; and no book, record, paper or document shall be re-

Section 7 of article 8 of the Constitution provides for a board of supervisors in each county, "with such powers as shall be prescribed by law." Under section 8—

"The legislature may by general law confer upon the boards of supervisors of the several counties such powers of a local, legislative and administrative character, not inconsistent with the provisions of this Constitution, as it may deem proper."

Under the authority thus conferred, the legislature enlarged the power of boards of supervisors by authorizing them

"to pass such laws, regulations and ordinances relating to purely county affairs as they may see fit, but which shall not be opposed to the general laws of this State." * * * 1 Comp. Laws 1915, § 2274.

We feel constrained to hold that the ordinance in question was not authorized by the enlarged power granted under this section. It empowers the board of

moved from the office or offices occupied by said department except upon the written consent of said superintendent; and any person or persons removing any book, record, paper or document from such office or offices without having first obtained such written consent, or who shall mark, mutilate, deface or destroy any such book, record, paper or document shall be deemed guilty of a misdemeanor, and upon conviction shall be subject to a fine not exceeding the sum of one hundred dollars, or by imprisonment in the county jail not exceeding ninety days, or both such fine and imprisonment in the discretion of the court.

SECTION 7. It shall be the duty of said superintendent to keep in his office books to be known as the "tract index," and to enter in such books an epitome of every deed, mortgage, agreement, release, discharge, attachment, lien, sale, lis pendens, or other instrument or transaction of record in any manner affecting title to land lying within the county of Wayne, and which have heretofore been entered of record in any of the record offices of the city of Detroit or the county of Wayne, or which appear of record in any of the courts in said county. And it shall also be the duty of such superintendent to enter in such tract index an epitome of the daily transactions in the

county auditors and the superintendent therein pro-
vided for to perform duties imposed on the register of
deeds by the general law relating to that office. It, in
effect, creates a new county office and is not a mere
employment of the superintendent to perform duties
which the board of supervisors have the power to pro-
vide for. The last section assumes to place the title
to the tract index in the Wayne county tract index
department. Clearly, the board of supervisors had no
power to so provide. There is no express grant of the
authority therein exercised in the statute, and we are
unable to conclude that such power is impliedly grant-
ed or is incidental to that which is expressly conferred.
In view of the length of this opinion and the fact that
the provisions of the ordinance can be easily changed
so as to make the duties of the superintendent those of
the register of deeds or a deputy appointed by him,
we refrain from discussing this question at greater
length.

---

various record offices hereinbefore mentioned. It being the
intent and purpose of this ordinance to have such "tract index"
contain a full and complete history of the title to every piece,
parcel, tract or subdivision, of land lying and being within the
county of Wayne, and to continue and perpetuate such history.

SECTION 8. Said superintendent is hereby authorized and em-
powered and it shall be his duty to furnish any person upon
request, an abstract of title to any piece, parcel, tract or sub-
division of land lying within the said county of Wayne. There
shall be attached to each abstract so furnished a certificate to
the effect that there has been entered therein every conveyance,
encumbrance or other instrument recorded or filed in the office
of the register of deeds for the county of Wayne and State of
Michigan affecting the title to the property covered by such
abstract from the date of the commencement thereof to the date
of the certificate thereof. The certificate may be enlarged to
cover such other matter mentioned in the preceding section, as
the superintendent may in his discretion determine, subject to
the approval of the board of county auditors.

SECTION 9. Said superintendent under such regulations and
conditions as the board of county auditors may prescribe, shall

We have not overlooked the claim of the defendants that the plaintiffs as taxpayers of the county have no right to question the validity of the ordinance in this proceeding. Their counsel insist that—

"They are not aggrieved by the circumstance that abstracts are made and furnished in this manner. * * * This is a question which can only be raised by the proper public authorities."

They rely on *Miller* v. *Grandy*, 13 Mich. 540; *Steffes* v. *Moran*, 68 Mich. 291; *Sweet* v. *Smith*, 153 Mich. 674; *Home Telephone Co.* v. *Railroad Commission*, 174 Mich. 219; and *Board of Education* v. *Gilleland*, 191 Mich. 276 (L. R. A. 1916E, 468), to support this claim. We think these cases may be distinguished and that the facts here presented are ruled by *Curtenius* v. *Hoyt*, 37 Mich. 583; *Callam* v. *City of Saginaw*, 50 Mich. 7; *Putnam* v. *City of Grand Rapids*, 58 Mich. 416; *Savidge* v. *Village of Spring Lake*, 112 Mich. 91, and Bates

fix the price to be paid for all abstracts furnished by said department, said price, so far as possible, to be determined according to the number of separate documents, instruments and proceedings appearing on said abstract. And he may also under such regulations and conditions prescribe a schedule of fees for searches and certificates, and for such other information as may be furnished by the books and records of said department. And said superintendent may, in any case where he deems it advisable, demand a fee in advance for any abstract of title furnished by said department.

SECTION 10. Said superintendent is hereby given exclusive authority to determine the manner and method of preparing abstracts of title, and the order or arrangement of the various documents, instruments and proceedings appearing thereon. Provided, however, that each deed, mortgage, agreement, release, discharge, attachment, lien, sale, *lis pendens*, or other instrument appearing thereon shall be numbered separately and successively.

SECTION 11. Said superintendent shall keep an accurate account of all moneys received by him and shall make a daily report to the board of county auditors of all moneys received by him on the previous day. And shall daily pay to the county

v. *City of Hastings*, 145 Mich. 574.   In the *Curtenius Case*, Mr. Justice Graves, after reviewing the authorities, apparently in conflict, said:

"The conclusion reached is that 'the decided preponderance of authority is in support of the right of the taxpayers to file bills on their own behalf in such cases.'"

In the *Savidge Case*, Mr. Justice Grant, speaking for the court, said:

"It is well settled in this State that a taxpayer in the situation of the complainant is entitled to maintain a suit to restrain the illegal action of a municipality in the expenditure of money."

The ordinance provides for the payment of salaries to the holder of an office created by it and deputies, assistants and clerks to be appointed by him.   We

treasurer all moneys received by him, and take the receipt of said treasurer for the same.  The books of account so kept by said superintendent [shall] be audited and inspected by the board of county auditors at least once every month or at any time deemed advisable by said board.  And all moneys paid by said superintendent to the county treasurer shall be credited to such fund or funds as may be designated by the board of supervisors.

Section 12. Said superintendent shall prepare and submit to the board of county auditors, an estimate of the expenses of said department for the ensuing year.  He shall also make a true and accurate report to the board of supervisors of all moneys received by said department during the prior twelve months and give such other and further information as may be required by said board of supervisors.

Section 13. Said superintendent may make such reasonable rules and regulations with reference to the inspection and examination of the files and records of his office as shall be deemed necessary for the protection of said records and files, and he shall absolutely prohibit the use of pen and ink in making copies of notes of such records and files, except by the employees of said department.  And he shall also furnish proper and reasonable facilities for the inspection and examination of the records and files in his office, and for making memoranda or transcripts therefrom during the usual business hours, to all

must assume that plaintiffs as taxpayers will be damaged thereby.

The decree rendered will be modified to conform to this opinion, and, as thus modified, affirmed. No costs will be allowed.

STEERE, C. J., and MOORE, STONE, CLARK, and BIRD, JJ., concurred.

The late Justice BROOKE took no part in this decision.

FELLOWS, J. (*dissenting*). Counties are organized for governmental purposes only. I do not regard it as one of the functions of these county governments under the present state of the law to engage in the business of selling abstracts. At least counties should not engage in such business unless expressly authorized so to do. The question of expediency of legislation is one for the legislature within the limits of the Constitution. The question of law, the question of power, is all we are permitted to determine. I am unable to agree that the authority to engage in the business of selling abstracts has been expressly conferred on counties by the legislature, and find it unnecessary to express any views as to whether if such power had been expressly conferred it would square with constitutional limitations. For these reasons I feel constrained to dissent from the opinion of Mr. Justice SHARPE.

---

persons having occasion to make examination of them for any lawful purpose.

SECTION 14. That the tract index or abstract books heretofore prepared under resolution of the board of supervisors of said county, adopted at a session of said board held in the year 1913, shall become the property of the Wayne county tract index department, and shall at all times remain the permanent records of said department.

SECTION 15. All ordinances or parts of ordinances in conflict herewith are hereby repealed.