## JOHNSON *v.* GIBSON.

1. INJUNCTION — MUNICIPAL CORPORATIONS — EQUITY — TAXPAYER MAY ENJOIN UNLAWFUL EXPENDITURE OF PUBLIC MONEY.

A taxpayer whose interest is sufficient to confer jurisdiction may maintain a bill in equity to enjoin the unlawful expenditure of public funds.

2. SCHOOLS AND SCHOOL DISTRICTS—INDIVIDUAL TAXPAYERS MAY NOT RECOVER MONEY ILLEGALLY PAID SCHOOL BOARD MEMBERS.

Taxpayers may not maintain a suit in equity on behalf of themselves and other taxpayers against members of a school board for an accounting and to recover money paid to them for services in connection with the construction of a schoolhouse in violation of 2 Comp. Laws 1915, §§

---

¹Injunctions, 32 C. J. § 470 (Anno); ²Schools and School Districts, 35 Cyc. p. 1049.

5671, 5759; right of action to recover same being in the school board.

3. INJUNCTION — INDIVIDUAL TAXPAYER MAY ENJOIN THREATENED PUBLIC WRONG—MAY NOT REDRESS WRONG ALREADY DONE.
   While in certain cases and under certain conditions courts of equity are open to an individual to enjoin a threatened public wrong, they do not open to him an avenue through which he may redress a purely public grievance in the nature of a wrong already done.

4. SCHOOLS AND SCHOOL DISTRICTS—MONEY ILLEGALLY PAID BOARD MEMBERS RECOVERABLE IN ACTION BY BOARD.
   If money for services rendered by members of a school board has been paid to them by the board in violation of 2 Comp. Laws 1915, §§ 5671, 5759, it may be recovered in an action at law by said board, and if the board refuses to proceed it may be moved to action.

5. SAME—SUPERINTENDENT OF PUBLIC INSTRUCTION MAY NOT MAINTAIN SUIT TO RECOVER MONEY ILLEGALLY PAID BOARD MEMBERS.
   Under 2 Comp. Laws 1915, § 5641, authorizing the superintendent of public instruction to require all boards of education to observe the law, he is not authorized to maintain a suit to recover moneys paid by a school board to its members for services rendered in connection with the construction of a schoolhouse in violation of sections 5671, 5759.

Appeal from Iron; Flannigan (Richard C.), J. Submitted June 15, 1927. (Docket No. 20.) Decided October 3, 1927.

Bill by Thomas E. Johnson, superintendent of public instruction, and others against James T. Gibson and others for an accounting. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*William W. Potter*, Attorney General, *L. A. Lyon*, and *Ryall & Frost*, for plaintiffs.

*C. D. Dwyer*, for defendants.

³Actions, 1 C. J. § 85; Injunctions, 32 C. J. § 470 (Anno); ⁴Schools and School Districts, 35 Cyc. p. 898 (Anno); ⁵Id., 35 Cyc. p. 898 (Anno).

SNOW, J.   Township unit school district, No. 1, of Hematite township, Iron county, decided upon the construction of a schoolhouse.   Defendants Gibson, Thompson, Burge, Gill, and Olson were members of the board of education, and it is claimed by plaintiffs that, while holding this office, they performed services in connection with the construction of the school building for which they received various sums of money from the board in payments, that this was in violation of section 4 of chapter 3 of the primary school laws, being section 5671, 2 Comp. Laws 1915, and of section 9, chapter 13, of the primary school laws, being section 5759, 2 Comp. Laws 1915, and subjected them to the penalty therein provided.

The bill of complaint was filed by Thomas E. Johnson in his official capacity as superintendent of public instruction, together with a group of taxpayers of the township, against the school district, the offending directors thereof, and also members of the new school board who had succeeded the former ones, resigned, before the commencement of the suit.   In view of our conclusion that none of the plaintiffs can maintain the action, we deem it unnecessary, at this point, to make further reference to the facts in the case.

The relief prayed in the bill of complaint was for an accounting by the defendants who were paid money for services in connection with and growing out of the building of the schoolhouse, and that they be ordered and decreed to pay and return the sums so found to have been unlawfully received by them, and therefore due the school district.   Decree was entered dismissing the bill, and plaintiffs appeal.

We are met at the outset with the disputed question of the right of taxpayers to file a bill in equity in behalf of themselves and other taxpayers to redress the grievance complained of; and if no such right exists in the taxpayer, has it in any way been accorded the superintendent of public instruction.   Our attention

has been directed to numerous authorities which each of the counsel contends establishes his position. We will attempt their analysis.

It seems to be the settled rule in Michigan that a taxpayer whose interest is sufficient to confer jurisdiction may maintain a bill in equity to enjoin the unlawful expenditure of public funds. See prevailing opinion on rehearing in *Carrier* v. *State Administrative Board*, 225 Mich. 571, and cases there cited; also *Thomas* v. *Board of Sup'rs of Wayne County*, 214 Mich. 91; *Attorney General* v. *City of Detroit*, 26 Mich. 263. Thus holding may also be classed *Curtenius* v. *Hoyt*, 37 Mich. 583, sustaining the right of a resident owner of real and personal property subject to taxation to maintain a bill to enjoin the issue of unlawful railroad aid bonds under a resolution of the township board; *Savidge* v. *Village of Spring Lake*, 112 Mich. 91, where a resident taxpayer was permitted to maintain an action to restrain a village from unlawfully constructing waterworks; *Callam* v. *City of Saginaw*, 50 Mich. 7, where a taxpayer properly filed a bill to restrain the issue of bonds for the erection of a courthouse for Saginaw county at the sole expense of Saginaw city; *Putnam* v. *Grand Rapids*, 58 Mich. 416, permitting taxpayers to file a bill to restrain a contract between the city and the electric light company concerning the erection of a large number of electric light towers; *Bates* v. *City of Hastings*, 145 Mich. 574, where the taxpayer restrained the city from issuing bonds because of an unlawful conspiracy to use the money for bonuses to manufacturing institutions.

It is principally upon this line of decisions that plaintiffs' counsel claim the right to maintain the bill in the case under consideration. They also cite a number of authorities dealing with the rights of stockholders in private corporations, which they contend to be analogous in principle. But we think otherwise. The right, granted an injured member of a private

concern, to complain of the misconduct of its officers is vastly different from that claimed here, viz., the right of a private taxpayer, with no grievance peculiar to himself, to attempt redress of one which afflicts the entire body politic. We are also cited to authorities from other jurisdictions which counsel for plaintiffs contend should be controlling. These have been examined, but we do not refer to them in detail, because we believe the question adversely settled by our own decisions.

The question first came before this court in *Miller v. Grandy*, 13 Mich. 540, where it was held that private persons could not assume to themselves the right to institute chancery proceedings to redress grievances on behalf of the public. We quote from the opinion of Mr. Justice CAMPBELL:

"We will next consider the case in the aspect which we think is its proper one, as a suit to protect the public interest. The complainant does not set up any grievance which is not of the same nature with the grievances impending over the rest of the community. The injurious attempt which was threatened is a public grievance of the same nature as a threatened public nuisance. It affects alike every taxpayer. It is an expected piece of official misconduct, whereby the municipality in the charge of the official persons will be made to suffer by their ill behavior. If the case made by the bill can be considered as a joint agreement to violate what they supposed to be the law, it would be an indictable conspiracy. If not designedly illegal, it would be a mistake committed in the exercise of duty, which would be void if exceeding their jurisdiction, but which, if not an excess of jurisdiction, must be corrected by such means as the law may have furnished for that purpose. And if no such means have been furnished, it must go uncorrected, and each private injury resulting must be remedied by itself.

"This bill can only be sustained by holding that every private citizen has the right to call public officers to account for their official misconduct, affecting the body politic, and not specially one man more than another. There were a few cases decided in the supreme court

of New York, which recognized such a right; but they have been overruled repeatedly, and the doctrine is now well settled that a private taxpayer, suffering under no special grievance, is not even a proper party to a bill filed to restrain threatened misconduct. * * *

"The interests of men in good government are joint, and not several. The single voter or taxpayer has no voice in public affairs. He can only exercise his influence as one of a lawful majority, and then only by his vote. The men whom he aids in electing, or who are elected in spite of him, represent the common will, which is the only will that governs. And grievances which afflict the community must be redressed by those to whom the law has intrusted the duty of interference. There are some evils which cannot be redressed at all, because the discretion of the officers producing them cannot be reviewed, and the people must bear the consequences of selecting such servants. But whenever redress is attainable, it must be sought for by some other minister than a self-appointed private party, in whom the people or their agents have not vested any such supervisory power."

It is stated in counsel's brief that this case has been practically overruled. They are in error. It is still the law of the State, and is controlling in cases of this character. It was cited with approval by Chief Justice WIEST in an opinion as recently as *Carrier* v. *State Administrative Board*, 225 Mich. 571, although the majority of the court there concluded the facts brought it within the line of those cases cited by Justice MOORE, holding taxpayers might maintain a bill of complaint to enjoin the expenditure of public funds.

In *Attorney General* v. *City of Detroit*, 107 Mich. 92, it is held that an information by the attorney general would not lie to compel municipal officers to repay money into the city treasury which it had unlawfully taken therefrom. The distinction between actions seeking to compel the repayment of moneys illegally paid out, and those under the preventive jurisdiction,

so-called, instituted to keep public officers from proceeding illegally, was there pointed out.

In *Steffes* v. *Moran*, 68 Mich. 291, where a taxpayer filed his bill to restrain the county treasurer from paying over certain moneys, it was held that public wrongs could not be redressed by private intervention. The court said:

"It is not necessary to consider how well or ill founded the claim may be as set out in the bill. Complainant only seeks relief on the ground that, as a taxpayer, he is entitled to complain of any diversion of public funds. His tax is but a small fraction of the sum in question; amounting, at most, to a few cents. "Under such circumstances, it is the settled law of this State that he cannot assume the functions of a redresser of public grievances. If his burdens would be increased to a sum large enough to come within the jurisdiction of equity, he would have some claim to redress on a sufficient case. But public wrongs must, in this State, be redressed by the people's public agents, and not by private intervention. The case of *Miller* v. *Grandy*, 13 Mich. 540, laid down the Michigan doctrine on this subject, with its reasons, and has been adhered to. It is not necessary to rediscuss it."

In an action to prevent baseball in Detroit on Sunday (*Sweet* v. *Smith*, 153 Mich. 674), this court said:

"We are asked to review an order of the circuit court for the county of Wayne denying a mandamus, prayed for by relator and others, compelling the respondent 'to execute and enforce all the laws pertaining to the preservation of the Sabbath, or the first day of the week, at the baseball park of the Detroit Club.' The purpose of the proceeding was to prohibit Sunday baseball playing in the city of Detroit. It does not appear that the grievance of the petitioners is any other than that sustained by other citizens of the city of Detroit. Neither does it appear that the attorney general of the State has refused to take action in the matter. Under these circumstances, petitioners have no right to relief. The grievance complained of is purely a public grievance, and redress should have

been sought by the people's public agents, and not by private intervention. See *People, ex rel. Russell*, v. *Inspector and Agent of State Prison*, 4 Mich. 187; *Miller* v. *Grandy*, 13 Mich. 540; *People, ex rel. Delbridge*, v. *Green*, 29 Mich. 121; *People, ex rel. McBride*, v. *Board of Sup'rs of Kent Co.*, 38 Mich. 422; *Steffes* v. *Moran*, 68 Mich. 291; *Smith* v. *City of Saginaw*, 81 Mich. 123."

In *Home Telephone Co.* v. *Michigan Railroad Com'r*, 174 Mich. 219:

"We think it well settled in this State that grievances which afflict the community must be redressed by those to whom the law has intrusted the duty of interference. Such has been the rule of law in this State for many years. *Miller* v. *Grandy*, 13 Mich. 540. It was there held that private persons could not assume to themselves the right to institute proceedings in chancery to redress grievances on behalf of the public. They can only proceed where their individual grievances are distinct from those of the public at large, and such as give them a private right to redress."

We feel this court committed to the doctrine that, while in certain cases and under certain conditions courts of equity are open to the individual to enjoin a threatened public wrong, they do not open to him an avenue through which he may redress a purely public grievance in the nature of a wrong already done. In the case before us, if money for services rendered has been paid by the board of education to those prohibited by law to receive it, it may be recovered in an action at law by such board, which may be moved to action if it refuses to proceed. This board represents the common will. Certain duties have been intrusted to it, among which is the duty to redress public grievances arising in its department of government, and none other may assume or exercise that duty. The same reasons which made *Miller* v. *Grandy* good law then make it good law today. We are constrained to hold that mere taxpayers may not

file a bill of complaint seeking the relief here prayed, and that no jurisdiction was conferred by it upon the court.

Does the making of the superintendent of public instruction a party plaintiff confer jurisdiction? Upon this phase of the case we adopt as our own the opinion of the trial court, as follows:

"It remains to consider whether this suit may be maintained by the superintendent of public instruction. The authority of the superintendent is prescribed and limited by Act No. 164, Pub. Acts 1881 (2 Comp. Laws 1915, § 5641). He is authorized by subdivision c of section 1 of the act:

"'To require all boards of education to observe the laws relating to schools, and he shall have authority to compel such observance by appropriate legal proceedings instituted in courts of competent jurisdiction by direction of the attorney general.'

"It would seem clear the authority of the superintendent under the subdivision quoted is limited to the bringing of suits to compel the school officer to act; to perform a duty prescribed by the laws related to public schools; to go ahead and do what the law commands him to do. Suit for debts or damages due from a school official to his district enforceable only by the levy and sale of lands or goods on execution are not included either expressly or inferentially. The same difficulties in the way of enforcing a money decree in a suit brought by the superintendent are present as in a suit brought by a taxpayer. The superintendent cannot be substituted for the board of education. Until the legislature is more explicit the recovery of such debts or damages can be had only in a suit brought by the district. It is no answer to say the present board of education of Hematite district declined to sue. They can be compelled to sue and to vigorously prosecute collection of any judgment obtained. The doctrine of *Attorney General* v. *Moliter,* 26 Mich. 444, and *Attorney General* v. *City of Detroit,* 107 Mich. 92, is applicable here.

"The superintendent is further authorized by subdivision j of the act:

"'To do all things necessary to promote the welfare of the

public schools and public educational institutions and provide proper educational facilities for the youth of the State.'

"That any unlawful and wasteful dissipation of school money is detrimental to the welfare of the public schools is a self-evident fact.    When the legislature charged the superintendent with the duty of promoting the welfare of the schools, they did not leave him entirely helpless in the face of the refusal of the board of education to sue for the recovery of money misappropriated, or dissipated, by school officials.    If not authorized by subdivision c, he is by subdivision j, to apply for mandamus to compel the board of education to commence and diligently prosecute a suit or suits for the recovery of such money.    But the courts are not authorized to recognize in him a right to institute any other legal action or proceedings in the present state of legislation on the subject."

The decree of the court, dismissing plaintiffs' bill of complaint, is affirmed, with costs to defendants.

SHARPE, C. J., and BIRD, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.